My name is Philip Levitz, and I represent the plaintiff, Derek LaMar. Mr. LaMar filed this federal lawsuit under Section 1983 because Virginia's post-conviction DNA testing statute unconstitutionally denied him access to modern DNA testing technology to prove his actual innocence. After Mr. LaMar's claim survived three years of litigation and Mr. Ebert's motions to dismiss and for summary judgment, the District Court dismissed Mr. LaMar's complaint sui sponte on two grounds, neither of which withstand scrutiny. First, the District Court invoked the Rooker-Feldman Doctrine, but that doctrine bars federal lawsuits challenging particular state court decisions, not constitutional challenges to state procedures, like Mr. LaMar's. The Supreme Court emphasized exactly that distinction under materially identical circumstances in permitting the plaintiff's complaint in Skinner v. Switzer to proceed. Second, the District Court held that Mr. LaMar failed to satisfy the pleading standards under Bell Atlantic v. Twombly, but the District Court identified no gaps in Mr. LaMar's factual allegations. Rather, it took issue with part of his legal theory that the Virginia statute denied him access to habeas relief. Twombly does not, however, require a plaintiff to plead his legal theory at all, much less a complete and accurate legal theory. And the District Court did not even address Mr. LaMar's core legal argument that the Virginia statute's procedures are unconstitutionally onerous, for instance, in denying him any opportunity for retesting of DNA evidence under newly available testing procedures. The District Court erred in putting the burden on Mr. LaMar to prove his case at the dismissal stage. As Mr. – as Defendant Ebert admits, dismissal of Mr. LaMar's pro se civil rights complaint is appropriate only if it appears to a certainty that plaintiff would not be entitled to relief under any legal theory, plausibly suggested by – Now, you didn't get into this until the Court of Appeals? So my client, Mr. LaMar, was proceeding pro se in the District Court, and certain aspects of his theory have been developed further in the Court of Appeals. So when did you get into the case? When did I, personally, at the Court of Appeals? I was appointed by – He had no lawyer in the District Court? That's correct. Okay. He was pro se all the way through, all the way through the District Court judgment? Exactly. Okay, that's what I thought, and I wanted you to say that. Yes, that's exactly right. In his due process claim, since he's acting pro se, he actually quoted verbatim the Skinner case in, I think, paragraph 24 of his complaint. That ought to be good enough to say the claim, don't you think? I agree, Your Honor. I think that essentially his complaint is modeled very much on the Skinner complaint that proceeded successfully and that the Supreme Court decided had stated a claim. I mean, as a functional matter, Mr. Lamar's complaint is nearly identical to, you know, the complaint in Skinner, and if the Skinner complaint proceeded, there's no reason that this complaint should not proceed as well. But this is Judge Sheehan, but let's just walk back through your argument for just a second. It's interesting, but I think parts of it may be flawed. First of all, you said there was an impermissible. First of all, Skinner had nothing to do with the merits of the claim, correct? Skinner merely established that the proper vehicle is 1983, correct? So I think Skinner did a couple of things. No, I just said, is that correct? That Skinner established that. Didn't Skinner say we're not addressing the merits of his claim? Yes. All Skinner stands for is that 1983 is a proper vehicle. That question was left open in Osborne, correct? So, Your Honor. No, isn't that correct? Do you know the Osborne case? I do know the Osborne case. Well, didn't Osborne decide, the Supreme Court decided on the second issue about the substantive right and left alone the proper vehicle, correct? That's correct. And in Skinner, the court specifically decided 1983 is an acceptable procedural vehicle, but they left alone any merits about the DNA testing, correct? They left alone the merits in that case because they agreed that the case should not be dismissed and sent it back to the lower court. That's what I said. Now, to say that he cited Skinner, that doesn't say anything about the merits of his case. When you say that the court impermissibly shifted the burden, now, he may get some latitude as a pro se, but under Iqbal, Iqbal applies to this case, doesn't it? It does. However, this court— Now, let me ask this question. No, let me finish the question. Sure. And so, under Iqbal, doesn't he have to stay, because I've tried to figure out what the district court did looking at it. You and I may come to the same point, but isn't what the court did below to say really under Iqbal, when you look at his claim, he really isn't stating a plausible claim for relief. Isn't that what the district court did? That is part of what the district court did, although it did it subject under Section 1915A, which was a separate error that we could talk about. Well, let's talk about that for a second. Let's talk about that for a second. Who do you think the right—who do you think 1915A protects when it says, as soon as practicable? That's not there to protect the filing person, is it? Well, it's there to protect both the judge and the parties, and particularly the— No, isn't it there to protect judicial—just think about it for a second. Isn't it really there to protect judicial resources and the person who's being filed against? Yes, I think that's right. That's not really— But let me—I think the context here is important to recognize, which is that by way of three years— No, but first answer my question. I agree with that. When you look at it as a practical matter, 1915A really is a protection for the court and its resources to get rid of a Federalist case as soon as you can, and the person who's been sued, so they don't have to use their resources. I agree, and I think that— Okay. It's very important to recognize what the situation is here, which is that the court waited three years and threw a motion to dismiss and a motion for summary judgment before invoking this Section 1915A. And the practical consequence of that was actually to make the defendant go through years of litigation that they wouldn't have needed to go through if the court had screened the complaint the way the statute requires it to be screened, which is— But stop for a second. No, no, but wait a second. The litigant didn't—unless the litigant changes position or has something bad happen during that time, like miss a statute of limitations, otherwise the filer really is not injured at all. He just has been in court three years longer or two years longer than he should have, perhaps. He hasn't lost anything, has he? I was actually—I wasn't focusing on the filer when I made my comment before. I was talking about the defendant. I mean, let's separate ourselves from this case for a moment and think generally about this statute. I agree with you that if the statute is about, you know, protecting somebody who's sued from being dragged through lots of litigation, the whole purpose of the statute is to require that the district court screen the complaint at the moment of filing. I mean, that's what the—by the way, separate from that, we have to look at what is the text of this statute. And the text of the statute is— I know that, but listen, I'm trying to figure out what is your—what's the real harm. Now, you may say that the 1915 motion sua sponte was decided incorrectly. That's an argument. I want to set that aside for a second. Yeah. But you haven't been harmed by the delay of a couple years in any way, have you? You were involved in litigation and were maybe allowed to get other information you wouldn't have. So have you been harmed at all because of the delay in time? It's hard to know precisely, but it's certainly possible. I mean, this case has already dragged on now for four years. No, I said how were you injured by it, by that 1915 being granted later rather than sooner? You really don't have any injury from that. Well, I think there is a potential injury in that my client, if his case had proceeded more quickly, could have potentially gotten out of prison. My client has been in prison— No, no, no, no, no, no, no. No. But in this case, he didn't get out. He lost. So the fact that it was decided later and he lost, he hadn't been harmed in any way, has he? Well, but he could have appealed earlier. I mean, there's plenty of, you know, different ways this case could have proceeded. I mean, if the district court had screened the complaint and said, here's the complaint at the moment of filing, my client— Do you think a district court would be better off stamping anything that's close to frivolous as frivolous the day it's filed or spending some time to look at it? Just a quick question on that. Absolutely. I understand what you're saying, and that's why there's the as soon as practical language. But it just simply can't be as soon as practicable to review a motion to dismiss, deny the motion to dismiss. You have to look at the complaint when you're reviewing a motion to dismiss, but then we— Let me turn to your claim. The other judges, y'all can kind of interrupt me if you need to ask some follow-up question. I'm talking on top of you. Let's go back now to the liberty interest. Where does the liberty interest that is to be protected by procedural due process, does that come from anywhere other than the state statute? Yes, the liberty interest comes from the U.S. Constitution, the due process laws of the— No, the liberty interest. The liberty interest for procedural due process. No, procedural due process protects the liberty interest, doesn't it? Right. So the liberty interest, it comes from the statute, doesn't it? I think I understand what you're saying. Well, so Virginia has— No, I'm asking. I'm asking, where's your argument? Where does the liberty interest come from? Does it come from any place other than the statute itself? Right, so there's a state-created liberty interest, I agree with you, created through the statute, an interest in being able to prove your actual innocence. Okay, and so can the state create a limited interest? The state can create a limited interest subject to the limits of due process. I mean— They create a limited interest, is that what you said? They can create a limited interest, but subject— They can create a limited interest. But subject to the limits of that federal due process. And here they tacked on it and said you can't use it for habeas corpus. I'm sorry? They said whatever you find out, you can't use in a habeas corpus case or something like that. There is a provision of the Virginia statute related to, yes, habeas, saying that you can't use the statute as a basis for seeking habeas relief. That's part of what— And why do you say that can't be done? Why do you say that can't be done? They don't have to create that liberty interest at all, do they? Well— Does the state have to pass a statute to create a liberty interest in DNA testing? No, but the state has chosen to do so. Okay, but now— And in choosing to do so, there's clear Supreme Court precedent. But wait, wait, the right can be limited. So why can't the state limit the right? They can limit it with the statute of limitations, can't they? They can limit the right, but there are restraints on the ways that they can limit the right. That's the whole idea of federal due process. You have some case law that said that if they create a limited liberty interest, that has to be allowed to be the basis for a habeas corpus? You have any law that says that? So not specifically on the habeas issue, but there's more general law. That's the Wolf case from the Supreme Court, and it's the theory behind the Osborne cause of action, that if a state creates a right, it can't also create such sort of impossibly onerous procedures that you can't actually exercise your liberty interest. That has nothing to do with it, though. No, no, no. Habeas isn't anything as to the creation of the right. Okay, so I think we're getting caught up on the habeas for a moment, and I want to step back and say that that's not the only thing that's unconstitutional or potentially unconstitutional about this Virginia statute. Well, just let me say this. I want to walk through them, though. You made the claim about the timing on 1915. You made the claim about habeas. I don't think your legal argument is on very strong footing there. Your real claim is limited procedural due process on the limited liberty interest that was created, correct? Yes, but let's talk about the specific aspects of the liberty interest that are being impeded by this Virginia statute, and one that's very notable is the fact that the Virginia statute is forbidding any retesting of evidence that's already been tested, even if the previous testing was flawed. But why? But no, that would be a substantive due process right. I thought yours was a procedural due process, that whatever the statute is and what rights it gives you, you haven't had a fair hearing on that. Are you asserting you have any freestanding right on DNA testing in Virginia, absent this statute? Not in the sense that, no, there's not a broader freestanding right. So the answer would be no. The answer would be no. So whatever right you are asserting comes out of this statute in Virginia, correct? That's what Osborne says, there is no substantive due process right for DNA testing. It says there's no overarching, in every situation, right to DNA testing. Every state, as far as I know, has created a procedure to permit DNA testing, because DNA testing is an extremely powerful tool to prove someone's right. But wait a second. No, but wait, but Virginia has created one. It has, and it's created a procedure that's so onerous. No, no, wait, wait, wait, and then I'm going to let you. Virginia has created one. Is there any, now this would be a substantive due process argument. I thought you were making a procedural due process argument. I am making a procedural due process argument. Not substantive. So the substance of the Virginia Act is not improper on the substance of the Act, because it's a limited right created by the state, is that correct? Well, the substance of the Act adds up to a procedure under the Act that's impossibly onerous. That's the problem here, is that the substance of the Act forbids any retesting of DNA evidence. The substance of the Act says that you can, you have to prove every aspect of your claim by clear and convincing evidence, including a chain of custody that the petitioner is going to have no control over. Wait a second. Is your argument that the procedural, the process is so flawed that it leads to a substantive due process right? That's your argument? I think it's more of the reverse. It's that the substance is so flawed that it leads to an inability to actually exercise it. No, no, no. Not the substance of the Act. A substantive due process argument. Again. Are you making a substantive due process argument? So ultimately, if you want to describe it as a substantive due process argument, yes. It's the same argument that was recognized. No, it's not a yeah. It's not a yeah. I'm asking. I didn't read your briefs to say you were making a substantive due process argument. I thought you were making a procedural due process. It is a procedural due process argument. I agree with you. Well then, but if it's procedural, I just want to say this and then I'll. You have to see what the liberty interest is based on the wording of the statute. Correct? Correct. Correct? And then the wording of that statute is determined of the state statute by the state court. Correct? Correct? It's determined. We don't decide what those words mean. You don't decide what those words mean. But if those words add up to something that is unconstitutional under federal law, a plaintiff can come to federal court and under Section 1983 file a lawsuit. No, no. But you're making a procedural claim that the right. You just told me you're not. See, I'm not sure you have your theory down. You're not making a substantive due process claim because statute is valid and created a limited right. But then the question is who defines what that right is, is the state court. But then the due process that you're entitled to, we would have to look at what the due process was allowed over that statute. Hasn't he been in court a number of times in Virginia? Hadn't he had hearings on this? That's exactly the problem is that he has been in court in Virginia a number of times, and it's been impossible for him to actually exercise his, in theory, state-created right to prove his innocence. I want to also emphasize that this case, again, is at the dismissal stage. The district court dismissed the complaint. To the extent that this theory, the legal theory, is not totally clear at this stage, that's not, you know, all that means is that we should remand the case back to the district court and provide an opportunity for my client to actually, you know, develop his legal theory and prove. I know that, but I'm looking at the interplay with your theory and Iqbal. Now, it's a little bit hard to say, I will say this to you, but I've read all this fairly closely, and I think the district court is saying you've been in state court, you know, Rooker-Feldman, I'm not saying that applies, but I think that's the tip of his hat or her hat to say you've been in state court, you've had hearings, and now I look at, and when I see what your claim is, that you aren't getting hearings or getting heard on this, that's wrong. You aren't stating a plausible claim, and that's why it's dismissed. Do you think that's what happened? It's very possible, but let me point out two flaws in that. One is that the district court couldn't do that under Section 1915a because it was much too late. And second of all, again, the case, the legal theory wasn't developed because my client had never, you know, had a chance to actually prove his claim. But you missed the point. Under Iqbal, Iqbal, you can dismiss a case before there's a summary judgment. You apply the Iqbal standard. So here the defendant filed a motion to dismiss, and the district court didn't apply the Iqbal doctrine to say that, you know, somehow there wasn't a claim here. Instead, the case proceeded through the motion to dismiss, through the motion for summary judgment, and nobody thought there wasn't a claim here. All of a sudden, you know, maybe you're right. The district court – Well, you're wrong about that. The court thought – the court finally – the court just gave your client more time for the court to think about and consider what he was doing. Now, by the way, none of us may be pleased with it, but I don't see how that prejudiced your client in the slightest, and you haven't pointed any prejudice. And the fact that he did it later rather than sooner by applying maybe the Iqbal test, that's not any problem, is it? Again, I think it is. Because if the case were actually screened at the time it was supposed to, at the beginning of the case, then my client could have appealed. The statute says the suit is practicable. That's correct. That's the language. Right. And here was, what, three and a half years? It was about three years. I thought the biggest part of that three years is that they sat around and the defendants there did respond. That is true. That was quite some time. The biggest chunk of time. Right, exactly. So in any event. At one point your man asked for a default against him, didn't he? That is true, yes. I mean, the point is the case was sitting around for a very long time, and, you know, had the district court had every opportunity to screen the complaint, it didn't in line with what the statute requires. Has he had all the testing that he wants now? No, he hasn't had it. I thought you were discussing with Judge Shedd that he'd already had all the testing. No, no, exactly. The whole problem is that he went to the state court. That's what I thought coming in here, that he wants access to the evidence to get tested. Absolutely right. He's gone through multiple state court motions trying to get his evidence tested, and the state procedures. You're trying to get the evidence tested to prove that there's a bad identification? Exactly. And so the whole point here is. Basically, you want to prove there's a bad identification so you can file for habeas corpus relief to get him out of penitentiary. That's exactly right. And the whole idea is that if the complaint were actually screened initially, even if the district court at that time decided to screen the complaint, he could have appealed to this court and would have saved potentially three years or four years in prison. That's pretty substantial. I thought we came in here, y'all were going to be arguing, at least early on, all about this Rooker-Feldman doctrine. I haven't heard much about that. Do you have an impression that the state's throwing that in? We'll have to ask them about it when I get up here. The argument, Ms. Reber's brief did make the Rooker-Feldman argument. I think that argument is clearly flawed. Do you have the impression they're going to concede that it's wrong? I'm not under that impression because that's not what they argued in their brief. But if they want to concede, I think that's appropriate. They hadn't briefed it that way. That's right. But the Skinner case, which makes this crystal clear. They must be going to say this is a Rooker-Feldman case. It ought to be thrown out on Rooker-Feldman. That's the way we refer to them over in West Virginia when you lose your case. You get thrown out. Well, the district court did throw this case out on Rooker-Feldman grounds, and that was error, and that was made very clear by the Skinner decision, which was identical circumstances and decided the same. What is your remedy for the late 1915 decision? What's the remedy for that violation in your mind? Well, at this point, to remand the case and say that it couldn't be disputed. No, but for the 1915 violation, just to remand with no comment on the merits, because that's your argument on 1915. Well, I think it's up to this Court how to approach that. No, I'm asking you what you want on the 1915 violation. I think if this Court was focused on that error, it could simply remand and say that was error, you couldn't dismiss on that ground, and the case should proceed to trial. The Court could also say, you know, more than that, and it could explain that the Rooker-Feldman decision was wrong. But as to 1915, you'd be satisfied if we sent it back and tell the Court, you acted too late, you now can take any steps you want to, not using 1915 to get rid of the case? I don't think that would be the best way to handle this, because you could provide the district court with more than that. You'd prefer we didn't do it that way. You'd prefer we say that the Rooker-Feldman was not applicable, that the complaint was sufficient, and that 1915 did the plot. That's correct. And that the case ought to go forward. That's correct. And, by the way, I'm well over my time. I know you are. I can see the red light. We're perfectly familiar with that. Excellent. Well, I'm happy to keep answering your questions. You drew a pretty good case here. If you're interested in getting involved in an interesting appeal, I'm sure that those senior partners at that big firm might figure that maybe they don't get paid much. But you got a pretty interesting case. Absolutely. And I appreciate the Court's appointment to assist Mr. Lamar. We appreciate you doing it. But Judge Schiff, Judge Floyd, do you all have anything else? Just let me say to everybody, Judge King, this setup is a nice setup, but the one flaw is I can see the lights, but I can't see the color on the lights, so I have no idea where the time is. It's been red. Judge Floyd, you got anything for him? Well, you saved some time, and we won't penalize you for answering the questions of the Court on that time. Thank you. So you've still got five minutes left, but we're going to hear from these individuals representing Mr. Etheridge. Thank you, Your Honor. And the first one, Mr. Crum. Nice to have you here today, sir. Thank you, Your Honors. May it please the Court, my name is Philip Crum. With me today is co-counsel Alexander Frankisenko. We're here on behalf of the appellee defendant, Commonwealth's attorney for Prince William County, Paul Ebert. Now, you all, are you all special assistants, attorney general or something like that? No, we are not. You're private counsel. Private counsel. But you're defending the? Constitutional officer of Virginia. Constitutional officer, but basically a constitutionality of a statute for Virginia, too. At this time, I don't believe the mayor is. You don't think that's in here, but I know it's in here. I would expect that Mr. Lamar thinks it probably is. I would also agree with that. Good to have you here. Go right ahead, sir. Commonwealth attorney Ebert respectfully requests that this Court affirm the judgment or, in the alternative, remain with instructions to assess the standing claim, which was argued, raised below. In support of affirming the judgment, I would like to discuss four issues, three of which may be addressed very briefly. Those issues are, first, the applicability of 28 U.S.C. Section 1915A, the applicability of the Rooker-Feldman Doctrine, whether the appellant plaintiff has standing, and, finally, the plausibility of the appellant plaintiff's allegations. Let me ask you. I said I was going to ask about the Rooker-Feldman Doctrine. Yes, Your Honor. Are you arguing that that applies here? Yes. Skinner forecloses the Rooker-Feldman Doctrine in many circumstances. However, there is the possibility that a court could read this complaint that it was stating a plausible claim against the conduct of the defendant or the decisions of the circuit court. The decision in Skinner hinged on the fact that the challenge was not against the prosecutor's conduct or the decisions reached by the court. It was expressly set forth that that wasn't the issue. That's not the case so far. There's nothing in the complaint that says that, and there's nothing in any of the briefs. Without that, we would contend that the paragraph of the complaint borrowed from Skinner, which I believe Judge Shedd was correct on, there's no decision on whether that. You may be conceding then that the Rooker-Feldman ruling was premature. It just is what you just said, that maybe it was there because it was premature. Well, to the extent that it was saying it barred a claim against the defendant's conduct or the decisions, I don't think it was early, which is why I think the district court also applied the plausibility standard to essentially the second claim, which is that the statute was unconstitutional and refers to the subsection G, the habeas clause of that statute. The claim in Skinner didn't have the secondary claim, which outright challenged the constitution of the statute. It only had that paragraph referring to the liberty interest and that the prosecutor's denial of access violated that interest. The court gleaned from that that there was a challenge to the constitutionality, and without ruling whether or not it was properly pled, determined whether or not Rooker-Feldman would bar that type of claim or whether such a claim is even cognizable under Section 1983. And the court stopped short from actually looking at that language and the facts of that case to determine if it actually pled a procedural due process issue. Actually, while discussing that, that's when, since it's not controlling on the issue of whether or not it's properly pled, I believe Osborne is really the guiding case on this. Now, while Osborne was deciding on a motion for summary judgment and talks about the burden, it ultimately lays the framework for how a procedural due process claim of this nature would be looked at. And it says the state's post-conviction relief procedures will only be upset by the federal court if it's fundamentally inadequate to vindicate the substantive right provided. This is where the complaint fails on the plausibility level because it suggests that the statute is unconstitutional because it bars the habeas relief premised upon using the statute. The substantive right of the statute is to have DNA tested. There's no allegations that support, and the argument has been raised that it's too onerous and it's impossible, but the allegations put in the complaint are merely about filing motions and the court denying those motions pursuant to that the plaintiff did not meet the standards set forth in the statute. Do you think, isn't this a little bit at the intersection of pro se pleading and Iqbal? Because what other basis is this, did the court rule on 1915 if it wasn't Iqbal? The court's two rulings were Rooker-Feldman and Iqbal, the motion to dismiss standard, which is what we don't have here. The claim... There's an overlay here that it was at the time a pro se complaint. That's true. The pro se complaint, though... Which had to be read liberally. Yes, and while it's read liberally, the paragraph 25 of the complaint, the joint appendix 15, expressly states Virginia Code 19.23271 is unconstitutional statute created to allow a convicted felon to have newly discovered previously untested biological evidence tested. However, subsection G of this statute prohibits plaintiff from any sort of corpus relief. That's a pretty specific claim. That claim is challenging that on its face it's unconstitutional because of that subsection. I think the discussion earlier that regarding the subsidy and limited rights created by the statute, the limited rights are created to have the post conviction or access to the DNA evidence, not the habeas relief. The fact that it's saying... Aren't you swimming upstream, really, because of the time the court took to grant the 1915 motion sua sponte, and because this is, we're dealing with the pro se pleading. You really, you're swimming upstream against that, aren't you? I don't believe so. The complaint lays forth facts that explain what they did and how the court ruled, which is ultimately why the district court brought in Rooker Feldman, because the actual alleged facts of the complaint discuss the application of the statute and seem to be saying that it was applied incorrectly, that the court got it wrong. Briefly, with regards to 1915A, while the court used that as a vehicle to dismiss pursuant to 12b-6, I believe the practical impact of a remanding solely based on 1950A wouldn't resolve the issues of the case, because... You think the court really wasn't using 1915A then? I think they did use it, but if you were, without grappling over whether or not the timing of it comports with the language of the statute... How, what's the, this was what, three and a half years? Roughly. There was a good time in that where the... What's the longest time that you found in any other federal case around the country that it waited on a 1915A ruling? I believe opposing counsel cited the longer of them, I believe it was 10 months, and it was related... I remember they said 10 months. I didn't find anything else. You didn't find anything that was longer than that? No. Okay. And the practical impact just... So it looks like we got you all agreeing it's 10 months, up till now. Yes, and unfortunately the district court didn't provide any reasoning... In the 10-month case, did they say that was too long, or that was all right? They said it was too long. They said that was too long. However, we don't have any information in the opinion going as to why the court thought it was practical at this point. There was a long period of time... What circuit was that? I'm sorry? What circuit was the 10 months ruling? I don't believe, I don't recall. I believe it may have been the 7th, but I don't remember. That's okay. Again, though, the practical impact, if it's remanded solely on this, is that we can either file a motion to reconsider on our previous 12B motion, or we can file a motion for judgment on the pleadings under 12C. I think you miscomprehended my question. I don't think... Listen, I could be wrong. I don't think this case is going back just on 1915. I would just ask that question to point out, in this case, likely, is no harm, no foul on the 1915, because that is just a minuscule part of this. We can argue, for academic reasons, whether that's too long or not. It may well be too long, but that really has very... The timing of the 1915 motion, sua sponte, the length of time, it has almost nothing to do with the result of this appeal, does it? I would agree with that, yes, Your Honor. Because he really wants to get to the merits, and you want to get to the merits, don't you? You don't want to get to the merits, do you? No, you want to get to the merits of your appeal why the decision below was correct, I mean. That is correct. Well, you know, look at this. The facts in this case are circumstances of change. He's now got a lawyer. So far as I know, he has not amended his complaint, and he would have that right to do that. And so if it went back, it might not be so easy for you to defeat his claim. That's true, which is why we would ask if this court decided not to affirm on the dismissal and remand, we would ask that the court instruct the court to address the issue of standing. While it hasn't been fully addressed yet, on the Joint Appendix 32, the lower court... Well, standing would always be an issue. That's a jurisdictional question. Yes. That ought to be addressed. The court orders indicate going back as far as 2003 that the Department of Forensic Science was ordered to preserve the evidence. It could create an issue of standing based on a mistaken belief that the Commonwealth's attorney caused the injury by not testing it for those motions filed after 2003, or even to the extent of redressability that the Commonwealth's attorney may not be the party that should be involved. As far as that goes, upon remand, we would ask that instruction be given to address the issue of standing. But the appellee contends that judgment still can be affirmed under the Osborne framework, that while ultimately, and we're dealing with a pro se complaint... Did you argue that in your brief? Did you argue this in your brief? That the judgment should be affirmed under the Osborne framework? We argued that it should be affirmed under the 12B standard. Now I'm taking that to the step where... You didn't cite it in the Osborne case in your brief. Not for its ultimate issue, which is what opposing counsel has come to, that the district court essentially citing Osborne said it was their burden. I don't believe the district court was saying it was the burden at that point, but merely that they were suggesting that the Osborne framework is the correct standard and that the complaint under 12B for plausibility needs to be looking at whether or not they've stated a claim that the Virginia statute is fundamentally inadequate to vindicate the substantive rights. The facts that are alleged are paragraphs of filing motions with the state court and the state court's determinations that the plaintiff had not met the standard of the Virginia statute. Thus, the first allegation or the first claim that was mentioned earlier that was copied from Skinner suggests that he's almost challenging the court's decisions. Then he has the clear claim that it's unconstitutional because of subsection G, preventing the habeas relief. The habeas relief is not what is the subsidence relief, that liberty interest that the statute grants. That part of the statute merely says that this statute itself cannot be its sole basis for a habeas claim. Do you think this statute is – this is a motion to dismiss, but I'm asking you. Is it your position, if you were to get to the merits, that there is no procedural due process problem with this statute with his trek through the state courts? Is that your position? At this time, with – You don't want to take a position? With representing the constitutional officer, we do not take a position at this time. You don't want to take a position? What's wrong if we send all this back pro se and let the court consider it under either a reconsideration of an old motion to dismiss or summary judgment and get some of these arguments fleshed out at this point? He's been pro se. By the way, sometimes we talk to lawyers and they don't know what the cases stand for. How in the heck is a pro se person supposed to know? At least he got the right general category, the Skinner case. What's wrong with just sending it back and letting you folks sort of start from, if it's not square one, at least square four or five and fill in some of these questions and arguments that we're asking about today? What's wrong with doing that? What's your single best reason not to do that? My time's about to run, but I'd like to – You keep going. Well, just take a – After that, I believe we will end up winding up in the same position where the Commonwealth's attorney is going to be making the same arguments that whatever they're going to plead, he's still not going to be the proper party. If it's just sent back to look at so they can reassess the pleadings. Well, who's got the evidence if the Commonwealth's attorney doesn't have it? Who's got control of the evidence? At this time, that's not part of the pleadings. The order at JA suggests that the Department of Forensics. Well, maybe somebody can fix this complaint and get them in here. I mean, that could be done, couldn't it? I believe it could. Yeah. We had – my time is up, but we had reserved five minutes for my co-counsel to address – Let's see if Judge Shedd or Judge Fulwight have additional questions of you first. All right. Okay. All right. You can turn it over to your partner there. That's Mr. Francojinko. Messed that up. Very good. Francojinko. All right. If you take it slow, it's not too bad. Thank you, Your Honors. I just reserved five minutes to address a couple of the issues. And it kind of addresses not only the first questions, but the last questions. Just so the Court has a little bit of understanding, we are a private law firm. We get a special appointment from the Attorney General of the Commonwealth of Virginia to represent constitutional officers. Why don't you go ahead and make the argument? Just make the argument. Well, Your Honor, it ties in with who is the defendant here, who the appellee here. The appellee is the Commonwealth's Attorney for Prince William County, Paul Ebert. He's an elected official. He is not the Commonwealth of Virginia. He is not an agent of the state. He is a separate constitutionally recognized individual. So I wanted to make sure there's a clear distinction here. He's a Commonwealth Attorney. You don't have to count this against you, but just as an observation, it sounds like he's an agent of the state if he's a Commonwealth's Attorney. But he's not. I heard you say that. Go ahead with your argument. And there's legally recognized... I mean, apostrophe S. As a matter of fact, in the statute, in his title, it's apostrophe S. That's right. The Commonwealth's Attorney. Right. And he is the head prosecutor for the county of Prince William County. The division, and my co-counsel is correct, in JA32, the Department of Forensic Science is the actual custodian, current custodian of the evidence in question. And they are, in fact, a state agency. They fall under a branch of the Commonwealth. But maybe that white should go back. They can amend the complaint and bring them in, and then we can find out through discovery who tells that department to turn that evidence loose. It may be Mr. Ebert. It may not be. But we don't know that right now. Well, it may be. But Mr. Ebert isn't the proper defendant. And the point is, is that if... If you were here, would you be representing the proper defendant? The Attorney General would be. The Attorney General would be here representing the proper defendant? Yes. That's why I legally can't even comment on whether this is a constitutional statute or not, because I'm not in a position. That would be just... Well, you can comment based on your research. We ask you questions. You're the only person we have here. That's correct. To answer them, and you're a lawyer. That's right. I mean, you might give us the wrong answer. Right. That's happened before. But you can do the best you can. But I'm not... I can't take an official position on behalf of the Commonwealth. You may not take an official position, but you can answer the questions. On behalf of... Sure. You can answer the questions that the judges ask. That's what I always thought lawyers do. And I'm trying to do that. You can talk about it all you want, but you can answer it the best you can. Yes, sir. Yes, Your Honor. Well, then why are you here to argue? The wrong person's in the case? You made that argument okay. You could dismiss... You could affirm this against Mr. Ebert, the prosecutor in the case, and it would not stop Mr. Lamar from filing a new case. He could file a new case. Instead of remanding this and keeping Mr. Ebert... dragging Mr. Ebert back down to the U.S. District Court, you can affirm this, and Mr. Lamar, now that he has counsel, can file the case against the Commonwealth. Your whole reason for being here is to say he named the wrong guy. That's your whole argument? It's to clarify who we are, correct, yes. Then he named the wrong guy. That's your argument? For whether or not this statute is constitutional, yes. He named the right guy if he was arguing, because originally he was arguing that in his claim for relief that Ebert... Well, originally he was asking for monetary damages, Your Honor. And so when we were retained to represent Mr. Ebert, initially there was a claim for monetary damages, which the court did grant our... Well, I thought that he agreed to dismissal for that, withdraw on that, didn't he? After the court ruled on it. He agreed to dismissal. Yes, Your Honor. Withdraw on the monetary damage claim. Yes, Your Honor. But that normally flows with a 1983 claim. That's correct. Which he characterized as... Wasn't Skinner the prosecutor? I believe so, yes, Your Honor. As Judge Floyd said earlier, he copied language right from Skinner. That's right. In that spring court case, spring court had a suit against the prosecutor. He brought a suit against the prosecutor. That's right. There is a factual distinction... That doesn't sound illogical for some guy in the penitentiary to agree to, if he's got a good case, to try to follow it. I agree 100%, Your Honor. I see my time's up. The distinction... Go ahead and answer the question. Sure. The distinction is, in this case, the record reflects that the custodian is, in fact, the Division of Forensic Science. The record reflects that? Yes, Your Honor. Or is that in the record? Did y'all say that in a motion or something? J.A. 32, the order that's attached to the, I guess, the complaint, where it says that there's a preservation order that the state court issued that the Division of Forensic Science is to preserve the evidence for another 10 years. And that order was issued in 2014. How did it get in this record? It's in this record? Somebody must have filed it. It was part of the summary judgment motion. That you all made? That we filed. So you filed it? That's correct, Your Honor. Okay. That's how it got into it. So everybody in the court knew of this back then? It was part of our defense exhibits that were attached to the summary judgment motion, which Judge Morgan considered in ultimately issuing his. And I think that goes to the plausibility argument. There is no plausible claim against Paul Ebert. That's not saying that Mr. Lamar doesn't have a plausible claim if he files it against the Commonwealth of Virginia or the Division of Forensic. Let me ask this question. Let me ask this question. Yes, Your Honor. If we send this case back, you can be hired and stand up in front of the district court and make that very same argument, can't you? I think an attorney general would actually come in and make that. No, I thought you represented. On behalf of Paul Ebert, yes. The argument you're making right now, you can do that in front of the district court if we send this case back, can't you? Yes, Your Honor. Yes. But it's going to be the same argument. He may decide it differently. Perhaps. Perhaps. I don't have anything further. Very good. Thank you. Good to have you here. Thank you, gentlemen. And I appreciate the arguments of all the lawyers, particularly Mr. Levitz, the work of you and your firm that assisted this fellow. Does Mr. Levitz have some time? Pardon? Does Mr. Levitz have some time? No. He does. He does. I'm sorry. I cut him off. I'm sorry. We had three lawyers. I usually end with that, the three lawyers thing. I understand. I think I heard enough. By the way, Judge King, if that's what you want to rule, you have my vote. Do you have anything you want to say at this point, Mr. Levitz? Just a couple of quick responses. First, on the— We've had a long morning. You go ahead. Yeah. On the standing issues, I just want to bring us back to the context here, which is that every other case in this posture, and there have been many, has been a case against the prosecutor positioned exactly like Mr. Ebert here, who has custody of— I think that we had one of these things several years ago. I was on a panel with Judge Ludick, I think. Are you talking about the Harvey versus Warren case? And that was against the guy named Horan. Yes, Harvey versus— And he was the prosecutor's attorney. Exactly. He was the Commonwealth's attorney. That's exactly right. And nobody ever said they sued the wrong fellow. That's correct. They came down here and litigated it and litigated it and litigated it. Right. Exactly. And just one more specific point in response to that, Mr. Ebert is talking about, oh, well, maybe the Department of Forensic Science was the appropriate defendant here. Well, again, no other suit has taken that approach, and there's never been a standing problem identified. But also, if you look at the Virginia law on this, and I can point you to Virginia Code Section 9.1-1101A, that law makes very clear that it shall be the responsibility of the Department of Forensic Science to provide forensic laboratory services upon request of an attorney for the Commonwealth, among other potential requesters. The Department works for the Commonwealth's attorney here, not vice versa. Responding to a couple of the other points that Mr. Ebert's counsel was making, first I want to emphasize that Mr. Ebert's counsel said clearly Skinner forecloses Rooker-Feldman in many circumstances. Well, how could it not foreclose this circumstance if it doesn't foreclose, I mean if it does foreclose many other circumstances, because the circumstances here are identical to the circumstances in Skinner, and Mr. Ebert never argued otherwise. To the point that the, as to what was required to be pled in the complaint, well, a pro se complaint in particular certainly, no complaint needs to plead a full legal theory, and a pro se complaint in particular, as this Court has emphasized, certainly does not and must be construed especially liberally. I want to point you also to the Supreme Court's decision in the Johnson case, which is cited in our brief where the Supreme Court is crystal clear that so long as plaintiffs state simply, concisely, and directly events that they allege entitle them to relief, they've informed the defendant of the factual basis for their complaint, and they're required to do no more to stave off threshold dismissal for want of an adequate statement of their claim. Well, clearly Mr. Lamar has satisfied that hurdle, particularly in the context of a pro se complaint. I mean the defendant here pointed you to language in his complaint on JA 15 where he says, defendants denial of access to this evidence has deprived plaintiff of his liberty interest in utilizing state procedures to obtain reversal of his conviction. You know, the subsection G piece, just because he mentioned subsection G, doesn't mean he's foreclosed from making any other legal argument, and that's exactly why this case should be remanded to further develop the legal argument that this statute is in fact unconstitutional. Going back to the Johnson case, what Mr. Lamar applied even more clearly is all the events that led to him bringing this federal lawsuit. He pled very clearly that he filed a number of motions in state court, each of which were summarily denied because he was denied any, you know, because he was unable to actually exercise his right under state law to prove his actual innocence and get the DNA tested. That was, for instance, because the statute prohibited him from ever having an opportunity to retest evidence, and in this case, there was evidence that could be tested under a revolutionary new procedure. That's the STR testing procedure as well as the mitochondrial DNA procedure, which weren't available at the time that Mr. Lamar was convicted. The Harvey v. Warren case that you mentioned, Judge King. That's Harvey. I'm sorry? Harvey. Harvey, yes. Judge Ludig's opinion in that case sort of comprehensively looks at exactly how incredible this technology was and what a revolutionary technology STR. And he talked about it, and we talked about the fact that it was developed. Absolutely, and that is exactly what was happening over the course of Mr. Lamar's time in prison when he filed these motions. He filed a new motion in 2008, for example, which was when the Virginia Department of Forensic Science began utilizing mitochondrial DNA testing, which allows for testing of hairs, which in Mr. Lamar's case couldn't be tested earlier, presumably, because mitochondrial DNA testing permitted testing of hairs that couldn't be tested before. I see my time is up, but if there are any further questions, I'm happy to answer them. I think we're about worn out, too. Thank you very much. We appreciate it, again, the efforts of all the lawyers, particularly the ones representing the pro se prisoner. We'll come down and read counsel and adjourn court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Dennis W. Shedd, Henry F. Floyd